UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH PARKER,
                    Plaintiff,

        v.                                          Civil No. 04-1057-HA

JO ANNE B. BARNHART,                                OPINION AND ORDER
Commissioner of Social Security,
                    Defendant.
_____

TIM WILBORN
Wilborn & Associates, P.C.
2020-C S.W. Eighth Avenue
West Linn, Oregon   97068-4612
                    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney, District of Oregon
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon   97204-2902

FRANCO L. BECIA
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, Washington   98104-7075
                    Attorneys for Defendant


HAGGERTY, Chief Judge:

        Plaintiff Joseph L. Parker brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act (the Act).  Plaintiff requests judicial review of a final decision by the Commissioner

of the Social Security Administration (SSA) denying his application for Social Security Disability Insurance Benefits (DIB). He seeks an order reversing the decision of the Commissioner finding plaintiff disabled, and remanding this action for an award of benefits. For the reasons stated below, this case is remanded for an immediate calculation of benefits.

ADMINISTRATIVE HISTORY

Plaintiff alleges that he became disabled on September 26, 1994. He was insured for DIB through December 31, 1999. On February 17, 1998, plaintiff filed an application for DIB. After his application was denied initially and on reconsideration, plaintiff was granted a hearing before Administrative Law Judge (ALJ) Stephen P. Kramer, on May 11, 1999. This ALJ retired without issuing a decision in plaintiff's case.

The case was reassigned to ALJ Jean Kingrey, and a second hearing was held on February 17, 2000. On May 26, 2000, the ALJ issued a decision finding plaintiff not entitled to DIB. Plaintiff appealed, and subsequently this case was remanded pursuant to the parties' stipulation. Pursuant to the remand, the ALJ held another hearing on February 18, 2004. The ALJ issued a decision on April 30, 2004, finding again that plaintiff did not qualify for DIB. Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, which denied his request for a review. This denial rendered the Commissioner's decision final. Plaintiff now appeals that decision.

FACTUAL BACKGROUND

Plaintiff was born on December 14, 1962. He alleges disability due to a multitude of conditions including chronic hepatitis C, which has caused him to experience fatigue, loss of appetite, pain, nausea and vomiting. Plaintiff also complains of continuing symptoms following surgery for bilateral ulnar nerve entrapment and for bilateral carpal tunnel syndrome, and frequent urination. He was forty-three years old at the time of his most recent hearing.

Plaintiff has earned a General Education Development high school equivalency degree and has served in the United States Navy. Plaintiff also obtained two years worth of college-

level courses. While in the Navy he worked as a machinist. Some of plaintiff's other jobs included an industrial spray painter, route delivery driver, and warehouseman.

In April 1981, plaintiff was treated for an ulnar styloid fracture in his left arm. In June 1982, he was diagnosed with an ulnar nerve contusion in his right arm. In July 1983, plaintiff reported suffering from malaise, fatigue, loss of appetite, dark urine, yellowish stools, and discolored eyes. Plaintiff was diagnosed with probable Gilbert's syndrome. On April 28, 1989, plaintiff was diagnosed with bilateral carpal tunnel syndrome after he experienced numbness, tingling, aching, and weakness in both hands. Plaintiff's doctor performed carpal tunnel releases on both wrists, and plaintiff was released to return to work in August 1989. On May 1, 1990, plaintiff was diagnosed with mild hepatitis.

On October 16, 1992, plaintiff was treated for increasing right abdominal pain, nausea, and vomiting. The treating physician performed exploratory laparotomy surgery and found no abnormalities.

By mid-1994, plaintiff was experiencing increasing pain and numbness in both his arms. Plaintiff was compelled to stop working in September 1994. In January 1995, another treating physician diagnosed plaintiff with bilateral ulnar nerve entrapment syndrome. Plaintiff had decreased grip strength, decreased sensation in the ulnar nerve distribution, and reduced musculature in both hands. The doctor performed surgery to release both nerves.

On February 13, 1995, a third treating physician, Dr. Richard C. Boughn, opined that it would be "unlikely" for plaintiff to return to his previous employment and that "efforts should be undertaken for retaining a more suitable position for him." Administrative Record at 416 (all remaining references to the Administrative Record will be designated by "AR" followed by the page number).

In June 1995, another physician determined that plaintiff's arms had healed sufficiently to resume work and recommended a physical capacities evaluation to assess plaintiff's exact abilities. AR at 388. The physician suggested that plaintiff would experience fatigue with repetitive use of his arms and hands. AR at 1014.

On February 1, 1996, Dr. Heidi Nelson performed a Veteran's Administration (VA) Compensation and Pension examination. Doctor Nelson assessed that plaintiff had elevated liver function tests, with jaundice, hepatomegaly, and liver tenderness. AR at 615-16. Ultrasound examination findings showed that plaintiff's liver was enlarged. AR at 611. In March 1996, plaintiff was diagnosed with hepatitis C. AR at 449. Wayne Kelley, P.A.C., and Dr. Ronald Grewenow examined plaintiff on behalf of the VA, and found slightly reduced sensation in plaintiff's forearms and slightly reduced range of motion in plaintiff's wrists. AR at 618-19.

On July 21, 1996, plaintiff was hospitalized after he attempted to commit suicide. AR at 447. Doctor Jeffrey B. Lenox assessed plaintiff with major depression and alcohol abuse disorder, and referred him to counseling. AR at 451. Plaintiff received counseling with his wife at the VA and was prescribed Paxil. AR at 455, 577. Plaintiff was later advised to discontinue Paxil because it increased his nausea. AR at 569.

On August 28, 1996, plaintiff completed a disability report. In the report, plaintiff explained that he stopped working because he was constantly tired, and that both his stomach and arms were in pain. AR at 177. At the request of the SSA, Dr. Leah Johnson examined plaintiff on September 28, 1996. She found that plaintiff had decreased dorsiflexion of both wrists with a decreased exercise tolerance. AR at 495. She also assessed that plaintiff had continuing problems with his hepatitis C condition. Doctor Johnson noted that plaintiff's symptoms were "very pronounced. . . . His symptoms definitely would make occupational activity difficult." AR at 495.

On September 18, 1996, plaintiff reported on a Vocational Rehabilitation Questionnaire that he naps approximately three times every day, for one to three hours at a time. AR at 194. He is capable of performing an activity for up to an hour, and often falls asleep. AR at 196. He also reported that he needs help to go to the grocery store. AR at 195.

In October 1996, treating physician Dr. Boughn opined that plaintiff "is completely unemployable." AR at 1031. In a report to plaintiff's insurance company, dated November 24, 1996, Dr. Boughn said that plaintiff became unable to work on September 26, 1996, due to his

chronic hepatitis C condition, and he did not anticipate that plaintiff's condition would change. AR at 790.

On February 25, 1997, the VA determined that plaintiff was "unemployable due to nonservice-connected factors."  AR at 836.

In another "Hearing Officer Decision" by the VA, issued on December 19, 1997, plaintiff's "ongoing (daily) problems with nausea and chronic fatigue" which are "directly attributable to his hepatitis/cirrhosis," a disease that is "progressing and will continue to progress," were acknowledged.  AR at 797-98.

On August 7, 1998, a new treating physician noted that plaintiff suffered from chronic fatigue and occasional nausea and vomiting.  AR at 688.  On January 21, 1999, plaintiff reported that his liver pain had become constant.  On June 24, 1999, plaintiff's liver x-ray was normal, showing no enlargement.  AR at 678.

There is additional evidence regarding plaintiff's health addressed by the parties and contained in the record, including issues regarding foot pain and urinary problems.  This court has determined that it need not address these other issues in determining the merits of the questions presented.

STANDARDS

A person may be eligible for DIB if he or she has insured status under the Act and suffers from a physical or mental disability.  42 U.S.C. § 423(a)(1).

A claimant is disabled for purposes of the Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).  A person can be disabled for these purposes only if his or her impairment is so severe that he or she "is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for DIB. 20 C.F.R. § 404.1520; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Below is a summary of the five steps:

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not working in a substantially gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment. Therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

When a determination of disability cannot be made at any of the first three Steps, the Commissioner then determines the claimant's RFC, which is what the claimant can still do despite his or her limitations. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. If so, the claimant is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds to Step Five. 20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  If not, the claimant is disabled.  If the Commissioner finds the claimant is able to perform other work, the Commissioner must identify the existence of a significant number of jobs in the national economy that the claimant can perform.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner does not meet this burden, the claimant is considered disabled.  20 C.F.R. § 404.1520(f)(1); *see also Tackett*, 180 F.3d at 1099.

The burden of proof is on the claimant as to Steps One through Four.  *Tackett*, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

The Commissioner has an affirmative duty to develop the record.  20 C.F.R. § 404.1512(d); *DeLorme*, 924 F.2d at 849.  In that sense, the proceedings are not adversarial, and the Commissioner shares the burden of proof at all stages.  *Id.*; *Tackett,* 180 F.3d at 1098 n.3.

The Commissioner's findings as to any fact, if supported by substantial evidence, is conclusive.  42 U.S.C. § 405(g).  Accordingly, the district court must affirm the findings of fact as long as they are supported by substantial evidence and if the proper legal standards were applied.  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990).  Whether substantial evidence supports a finding is ascertained by reviewing the record as a whole, with the court weighing the evidence that supports, as well as the evidence that detracts, from the ALJ's conclusion.  *Sandgathe*, 108 F.3d at 980.  The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld even if the evidence would support either outcome.  *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

ADMINISTRATIVE RULING

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability in September 1994. AR at 742. At Step Two, the ALJ found that plaintiff had an impairment, or a combination of impairments, considered severe, including hepatitis C; substance abuse; depression; carpal tunnel syndrome, and ulnar nerve entrapment based on the requirements in the Regulations 20 C.F.R. § 404.1520(b). *Id*. At Step Three, the ALJ found that plaintiff's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. AR at 743. The ALJ found that plaintiff retained residual functional capacity (RFC) to lift twenty pounds occasionally and ten pounds frequently. AR at 750. Plaintiff could sit, stand, and walk up to six hours a day. *Id*. The ALJ found that plaintiff "could not perform rapid fine motor movements of the hands or prolonged repetitive movements of the arms and elbows bilaterally." *Id*.

At Step Four, the ALJ found that plaintiff's past relevant work was incompatible with plaintiff's RFC assessment. *Id*. as noted above, because of this finding, the burden shifted from plaintiff to the Commissioner to show that there are other jobs existing in significant numbers in the national economy that plaintiff can perform, consistent with his RFC, age, education, and work experience.

At Step Five, the ALJ found plaintiff not disabled within the meaning of the Act. The ALJ, with the aid of a vocational expert, determined that plaintiff could perform "light work" and "sedentary work" that existed in significant numbers in the national economy, such as a security guard, assembly machine monitor, food and beverage clerk, and telephone solicitor. AR at 749. Accordingly, the ALJ concluded that plaintiff was not entitled to an award of DIB. The Appeals Council denied plaintiff's request for reconsideration, and plaintiff seeks judicial review.

QUESTIONS PRESENTED

Plaintiff contends that the ALJ erred by improperly rejecting five sources of evidence: (1) plaintiff's testimony; (2) the medical opinion of plaintiff's treating physician; (3) the testimony of plaintiff's spouse; (4) certain opinions of consulting doctors; and (5) the

determination of plaintiff's disability made by the VA. Because this court determines that errors involving the evaluation of plaintiff's testimony and the opinion of plaintiff's treating physician compel remanding this action for a calculation and award of benefits, the merits of the other arguments need not be reached.

ANALYSIS

      1.      Plaintiff's Testimony

At plaintiff's hearing in 2000, he testified that he suffered from chronic hepatitis C, fluctuating pain in his liver, frequent nausea and vomiting, diminished appetite, and fatigue. He also testified that his physical condition has worsened because he now also has ulnar nerve damage and suffers from carpal tunnel syndrome. AR at 63-64. Plaintiff also described being unable to perform any household chores, and becoming so exhausted after taking his two children to school that he is compelled to rest or sleep for at least two hours afterwards. AR at 61. At his more recent hearing, conducted on February 18, 2004, plaintiff testified about having to urinate up to twenty times a day, and suffering from pain significant enough to require prescription medicine. AR at 1040-44. His pain is attributed to ulnar nerve damage and hepatitis. AR at 1043-44. Plaintiff and his counsel also incorporated his previous testimony in 2000 about his impairments. AR at 1044.

In evaluating a plaintiff's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3). "The

ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

When determining that subjective testimony is not credible, the ALJ may rely on  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 720)).

If the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms that the plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of the plaintiff's symptoms unless there are clear and convincing reasons, supported by substantial evidence, for doing so.  *Rollins*, 261 F.3d at 856.  The proffered reasons must be adequately specific to permit a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit it.  *Id.* at 856-57 (citation omitted).

In this case, plaintiff produced some objective medical evidence of underlying impairments.  However, the ALJ's findings rejected plaintiff's testimony without providing specific, clear and convincing reasons for this rejection.

The ALJ rejected plaintiff's testimony describing the degree of his impairments on grounds that plaintiff's "statements regarding the nature and severity of his pain and other symptoms have been inconsistent."  AR at 747.  The ALJ derived this possible inconsistency from the fact that plaintiff has pursued vocational rehabilitation, attended college, and has looked for employment, to such an extent that the ALJ opined that perhaps plaintiff has become frustrated about an inability to convince an employer to hire him despite his liver disease.  *Id*.  The ALJ observed that plaintiff has demonstrated interest in vocational rehabilitation "and even [has] taken college courses with the goal of entering a new occupation that is compatible with his

medical limitations. The exaggeration of the nature and severity of his impairments remains most evident in light of the record as a whole." AR at 747-48.

These reasons for discrediting plaintiff are insufficient. Extrapolating diminished credibility regarding plaintiff's impairment testimony from evidence that plaintiff attempted to work and may be frustrated that he cannot, and by a vague reference to the "record as a whole," falls short of the clear and convincing standard that must be applied in evaluating the rejection of plaintiff's testimony.

There is some authority within the Ninth Circuit that in cases in which the ALJ's reasons for rejecting the claimant's testimony are legally insufficient, and the record is clear that the claimant would be found disabled if the claimant's testimony were credited, a remand ordering the calculation and award of benefits is appropriate. *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *see also Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

More recently, the Ninth Circuit has questioned whether the "crediting as true" doctrine is mandatory. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) ("[i]nstead of being a mandatory rule, we have some flexibility in applying the 'crediting as true' theory."). However, even if *Connett* properly establishes that there is discretion in determining whether testimony that is improperly rejected should be credited as true, this court concludes that this plaintiff's testimony, and (as discussed below) the opinion of Dr. Boughn, should both be credited and that this case must be remanded for the calculation and award of benefits.

2.      Treating Physician Testimony

As noted above, Dr. Richard Boughn, one of plaintiff's treating physicians, opined in October 1996 that plaintiff is "completely unemployable." AR at 1031. Moreover, on November 24, 1996, Dr. Boughns noted that plaintiff had been unable to work for several months, a change in plaintiff's condition was unlikely, and that the date on which he might be able to return to work was unknown. AR at 790. The ALJ rejected this treating physician's opinion as having "very limited evidentiary value" on grounds that this doctor had been treating plaintiff since 1994 and, in the ALJ's view, his "office and treatment notes" do not support the

October 1996 and November 1996 opinions. AR at 747. The ALJ refers to a February 1995 statement in which Dr. Boughn addressed the possibility of plaintiff returning to work. *Id.*

An ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinion, and must provide specific, legitimate reasons for rejecting controverted expert opinion. *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). An ALJ need not accept a treating physician's opinion that is conclusory, brief, and unsupported by clinical findings. *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

The medical opinions of Dr. Boughn, which succinctly state that plaintiff cannot engage in full-time employment, is not released to return to work, and is not expected to experience a "fundamental change" in his condition, AR at 790 and 1031, appears uncontroverted in the record compiled by the ALJ, and so can only be rejected with clear and convincing reasons.

The rationalizations presented for rejecting Dr. Boughn's opinion fall short of this exacting standard. Notes made by the same doctor twenty-one months earlier, before plaintiff had been diagnosed with hepatitis C, and regarding rehabilitation and retraining possibilities that might have enabled plaintiff to return to work in 1995, fail to diminish the weight of the doctor's conclusions that by November 1996 plaintiff's disabilities rendered him unemployable.

There is some confusion about the timing and scope of other medical opinions about plaintiff's ability to work. Even if Dr. Boughn's opinions could be construed as being in conflict

with other medical opinions, the ALJ's reasons for virtually disregarding Dr. Boughn's October 1996 and November 1996 opinions are neither specific nor legitimate. The reasons for disregarding Dr. Boughn's opinions are insufficient regardless of whether Dr. Boughn's opinion is construed properly as uncontroverted or in conflict with other medical opinions in the record.

When the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is generally credited as true as a matter of law. *Lester*, 81 F.3d at 832. A reviewing court then has the discretion to remand for further administrative proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985).

The "crediting as true" rule was established in *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396 (9th Cir. 1988) (referred to as "*Varney II*"). In adopting the "crediting as true" rule of the Eleventh Circuit, the Ninth Circuit acknowledged that the rule promotes important objectives: "Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from 'reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result.'" *Id.* at 1398 (citation omitted).

As noted above, some Ninth Circuit panels have questioned the doctrine and whether it should apply in cases in which the claimant's pain testimony has been improperly rejected and would traditionally be credited as true. *See Connett*, 340 F.3d at 876; *see also Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996) (the ALJ may reopen hearing to receive additional credibility evidence); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding for further findings evaluating the credibility of claimant's subjective complaints); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (remanding for further proceedings to evaluate claimant's claims of disabling pain). As stated above, this court construes the reasoning in *Connett* to permit the exercise of discretion in determining whether to credit a claimant's improperly rejected pain testimony as true.

Similarly, this court also interprets these recent rulings regarding the "crediting as true" doctrine as continuing to permit an improperly rejected medical opinion to be credited as true. Even if the scope of the recent rulings were intended to include improperly rejected medical opinions, the validity of these rulings is unclear. Only a panel sitting *en banc* may overturn existing Ninth Circuit precedent. *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (citations omitted); *see also Baker v. City of Blaine*, 221 F.3d 1108, 1110 n.2 (9th Cir. 2000) (a court panel has no authority to disavow the holdings of a prior panel). Accordingly, this court concludes that Dr. Boughn's improperly rejected opinions of plaintiff's unemployability is credited as true and this court is compelled to remand this action.

Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Id.* at 1178. A reviewing court should credit evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited as true. *Smolen*, 80 F.3d at 1292.

Under these standards, remand for a finding of disability and an award of benefits is appropriate here. The ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony about his impairments or for rejecting Dr. Boughn's opinion that plaintiff's disability renders him unable to work. There are no outstanding issues that must be resolved before a determination of plaintiff's disability can be made. Based upon the administrative record before the court, there is no doubt that crediting plaintiff's testimony and Dr. Boughn's opinions requires a finding that plaintiff is disabled.

Because remand for an award of benefits is appropriate based upon the improperly rejected testimony of plaintiff and Dr. Boughn's opinions, it is unnecessary to further examine

the alleged errors of the ALJ pertaining to the rejection of the testimony of plaintiff's wife or the failure to weigh the VA findings appropriately. It is clear from the record that the ALJ must find the claimant disabled after crediting the evidence in question, and additional proceedings are unnecessary to determine plaintiff's entitlement to benefits. The record is fully developed, and further proceedings "would serve no useful purpose." *See Smolen*, 80 F.3d at 1292; *see also Lester*, 81 F.3d at 834 (if evidence that was improperly rejected demonstrates that claimant is disabled, court should remand for payment of benefits). When it is evident from the record that benefits should be awarded, remanding for further proceedings would only needlessly delay the realization of the primary purpose of the Act. *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995) (citation omitted); *see also Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993).

Moreover, permitting the Commissioner a further opportunity to amend findings to comport with the denial of disability benefits is not in the interests of justice. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

CONCLUSION

Based on the foregoing, this court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Under the applicable standards, after giving the evidence in the record the effect required by law, plaintiff is unable to engage in any substantial gainful activity by reason of his impairments, and he is disabled under the Act. Accordingly, the final decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the calculation and award of benefits to plaintiff Joseph Parker starting from September 26, 1994.

IT IS SO ORDERED.

DATED this _____30_____ day of September, 2005.

   /s/Ancer L.Haggerty
ANCER L. HAGGERTY
United States District Judge